UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-21517-CIV-HUCK

JOHN DOE,

    Plaintiff

v.

EJERCITO DE LIBERACION NACIONAL,
a/k/a ELN, a/k/a National Liberation Army,
and FUERZAS ARMADAS
REVOLUCIONARIOS DE COLOMBIA,
a/k/a FARC, a/k/a REVOLUTIONARY
ARMED FORCES OF COLOMBIA,

    Defendants

v.

HELM BANK USA,

    Garnishee.
_____/

## UNOPPOSED MOTION FOR RELEASE OF FUNDS HELD BY GARNISHEE, HELM BANK USA

    Plaintiff, John Doe, pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002, 28 U.S.C. § 1610 note ("TRIA") and Fed. R. Civ. P. 69, hereby moves for an order compelling Garnishee Helm Bank USA ("Garnishee") as garnishee, to turn over certain funds that are now in its possession.[1]  The funds to be executed upon are secured

---

[1] As a result of an agreement between Ganrishee and Plaintiff, which agreement is more fully described below, Garnishee does not oppose the entry of the requested turnover order.  However, Garnishee does not agree with certain positions taken by Plaintiff with regard to certain legal issues, such as the breadth of TRIA's application, the effect of certain court orders and opinions regarding TRIA, preemption, priority, the effect of TRIA on state law liens, and the effect of certain state law foreclosure judgments on Plaintiff's ability to obtain a turnover order.

by a Writ of Execution issued April 26, 2013 to enforce the Default Final Judgment entered by this Court on January 5, 2012. [D.E. 42].

## INTRODUCTION

1. On January 2, 2012, Plaintiff obtained a judgment in this action against the narco-terrorist organizations Revolutionary Armed Forces of Colombia ("FARC") and Ejercito de Liberacion Nacional ("ELN") for an amount totaling Thirty Six Million Eighty Thousand Dollars and zero cents ($36,800,000.00) [DE 42] (the "Judgment"). The Judgment awarded Plaintiff $16,800,000.00 in compensatory damages, jointly and severally, and $10,000,000.00 in punitive damages against each Defendant.

2. The Judgment was obtained pursuant to a civil action brought under the Alien Tort Statute, 28 U.S.C. §1350, and Civil RICO, 18 U.S.C. §§ 1961-1698, arising from the FARC and ELN's, international kidnapping, torture and ransom of Plaintiff John Doe.

3. On October 24, 2012, Plaintiff filed a judgment lien certificate with the Florida Department of State. The entire Judgment plus interest still remains due and owing. The time for filing an appeal of the Judgment has lapsed. *See* Affidavit of John Thornton, attached hereto as Ex. A.

4. Plaintiff does not believe that the Defendants have in their possession visible property on which levy can be made sufficiently to satisfy the said Judgment. *Id.* The Plaintiff moves for an Order to be issued against Garnishee, which has indicated in response to Writs of Garnishment [D.E. 60, 61] that it has in its possession or control some monies received as a result of two foreclosures of mortgages related to properties in which two individuals have an interest. As will be shown herein, these two individuals

are each an agency or instrumentality of a terrorist party Defendant subject to execution pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002, 28 U.S.C. § 1610 note ("TRIA").

5. As is explained more fully below, Section 201(a) of the Terrorism Risk Insurance Act of 2002, 28 U.S.C. § 1610 note ("TRIA"), provides the federal statutory procedure for the enforcement of judgments against terrorist organizations such as FARC and ELN, and for executing on any blocked assets of such terrorist organizations, their members, **or any entity or person who is their agency or instrumentality**:

> SEC. 201. SATISFACTION OF JUDGMENTS FROM BLOCKED ASSETS OF TERRORISTS, TERRORIST ORGANIZATIONS, AND STATE SPONSORS OF TERRORISM.(a) IN GENERAL- Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322; 28 U.S.C. § 1610 note.

6. Plaintiff has obtained the Judgment against the FARC and ELN, each of which is a "terrorist party" as defined by Section 201(d)(4) of the TRIA on a claim for which they are not immune under section 1605(a)(7) of title 28, United States Code, *i.e.*, the Foreign Sovereign Immunities Act ("FSIA"). Plaintiff seeks to enforce the Judgment against the "blocked assets" of agencies or instrumentalities of one or both of the Defendants. As will be shown herein, the agent or instrumentality of the terrorist party that is the subject of this motion has been designated by Department of Treasury's Office

of Foreign Assets Control ("OFAC") as a Specially Designated Narcotics Trafficker ("SDNT").

7. Through its designations of individuals as SDNTs, and through organization charts it publishes, the U.S. Department of Treasury, working in conjunction with other agencies, including, *inter alia*, the Department of Justice, regularly identifies individuals and organizations involved in the narcotics trade emanating from Colombia[2], and chronicles the connections between the various members of the Colombia-centered international narcotics trade. This motion will rely on those official OFAC designations and publications, as well the expert testimony of David L. Gaddis ("Gaddis"), the former Chief of the Enforcement Division of the Drug Enforcement Agency ("DEA")[3], whose

---

[2] According to the statutory regime:

> The term specially designated narcotics trafficker means:
> (a) Persons listed in the annex to Executive Order 12978 (3 CFR, 1995 Comp., p.415);
> (b) Foreign persons designated by the Secretary of Treasury, in consultation with the Attorney General and the Secretary of State, because they are found:
> (1) To play a significant role in international narcotics trafficking **centered in Colombia**; or
> (2) Materially to assist in, or provide financial or technological support for or goods or services in support of, the narcotics trafficking activities of specially designated narcotics traffickers; and
> (c) Persons determined by the Secretary of the Treasury, in consultation with the Attorney General and the Secretary of State, to be owned or controlled by, or to act for or on behalf of, any other specially designated narcotics trafficker.

31 C.F.R. §536.312 (emphasis added).

[3] Mr. Gaddis began his career in local law enforcement before joining the federal DEA in February 1986, where he was assigned to the Atlanta Field Division in Atlanta, Georgia. Mr. Gaddis' career was fast-tracked and subsequent assignments included the DEA Miami Field Division; the DEA's Office of International Operations drug interdiction program, known as Operation SNOWCAP, with extended TDY assignments in South and Central America; and San Jose, Costa Rica, where he worked as a Criminal Investigator in Costa Rica and Nicaragua. In 1995, Mr. Gaddis was promoted and assigned to the Hermosillo, Mexico, Resident Office where he served as the Resident Agent in Charge. In 1998, Mr. Gaddis was assigned to DEA Headquarters in Washington, D.C., serving as Staff Coordinator and Section Chief in the Mexico and Central America Section, Office of International Operations. In 2000 he assumed the position of Deputy Chief of International Operations. In 2001, Mr. Gaddis was reassigned as Assistant Special Agent in Charge for the North Carolina District, where he managed DEA operations throughout the State until assignment to the Senior Executive Service as Regional Director for DEA's Andean Region in Colombia, Venezuela, Ecuador and Peru. Mr. Gaddis headed the management and enforcement operations of this region until 2006 when he was promoted from Bogotá, Colombia, to Mexico City, Mexico, as DEA's Regional Director for Canada, Mexico and Central America.

sworn testimony is filed contemporaneously herewith, in order to show that the targets of this motion are the agents or instrumentalities of the Judgment Defendant terrorist organizations, and thus that their blocked assets are subject to execution or attachment in aid of execution.

I. **Jurisdiction**

This Court has subject matter jurisdiction over Plaintiff's post-judgment execution proceedings pursuant to 28 U.S.C. § 1331. The question of execution against accounts blocked pursuant to OFAC designations in order to collect a judgment against designated terrorist parties under Section 201 of the Terrorism Risk Insurance Act of 2002 is a federal question. *Weinstein v. Islamic Republic of Iran,* 609 F.3d 43, 50 (2d Cir. 2010).

II. **The TRIA Preempts State Procedure and Provides for Execution**

A. **The TRIA preempts state procedure.**

Plaintiff' motion and post-judgment execution against the blocked funds are controlled by Section 201 of the TRIA. The TRIA governs over Federal Rule of Civil Procedure 69(a) in this instance, which states in pertinent part:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, ***except that any statute of the United States governs to the extent that it is applicable***.

---

In 2009, Mr. Gaddis was selected as Deputy Chief of Operations, Office of Global Operations, Chief of Enforcement Division, and reassigned to DEA Headquarters in Arlington, Virginia. In this capacity, Mr. Gaddis coordinated enforcement and administrative matters for all of DEA's field elements – domestic and foreign – and represented DEA's offices worldwide on matters relating to joint investigations and enforcement initiatives and other programs within the inter-agency community. Affidavit of David L. Gaddis, attached hereto as Exhibit B at pars. 2-3.

Fed. R. Civ. P. 69 (emphasis supplied).

To the extent any state laws on post-judgment enforcement conflict with the TRIA, the TRIA will control and is the legal mechanism to satisfy the Judgment.

### B. The TRIA provides for execution against the blocked assets of non-party agents and instrumentalities of terrorist party judgment debtors.

#### 1. Non parties' assets are subject to execution.

The TRIA allows for execution on the blocked assets of a terrorist party, or its agency or instrumentality, to satisfy a judgment against the terrorist party. It leaves no doubt that the agent or instrumentality need not be a named defendant. "[B]y its terms § 201 provides that the blocked assets that may be executed upon are those of either the 'terrorist party' or 'any agency or instrumentality of that terrorist party,' even though the judgment itself need be only against the terrorist party." *Weininger,* 462 F. Supp. 2d. at 479. The Second Circuit Court of Appeals held that: "Accordingly, we find it clear beyond cavil that Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post- judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, ***even if the instrumentality is not itself named in the judgment****.*" *Id*. at 50 (emphasis supplied). *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010); *See also Ungar v. The Palestinian Authority*, 304 F. Supp. 2d 232, 241 (D.R.I. 2004)(HLF is an agency or instrumentality of Hamas because it acts "for or on behalf of" Hamas).

Further, the Middle District of Florida has set forth what qualifies as an "agency or instrumentality" of the FARC:

> 11. The Court finds that OFAC's designation authority and criteria under its counter-terrorism and counter-narcotics sanctions programs is derived

from statutes, executive orders and regulations, are consistent with the ordinary and plain meaning of the terms agency or instrumentality and further finds that these definitions should be applied to determine that any SDNT or SDNTK with a nexus to the FARC qualifies as an agency or instrumentality of the FARC.

12. Any SDNT or SDNTK person, entity, drug cartel or organization, including all of its individual members, divisions and networks, that is or was ever involved in the cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipment or transportation, distribution of FARC coca paste or cocaine, or that assisted the FARC's financial or money laundering network, is an agency or instrumentality of the FARC under the TRIA because it was either:

> (1) materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a specially designated narcotics trafficker [FARC]; and/or
> (2) owned, controlled, or directed by, or acting for or on behalf of, a specially designated narcotics trafficker [FARC]; and/or
> (3) playing a significant role in international narcotics trafficking [related to coca paste or cocaine manufactured or supplied by the FARC].

This includes SDNT and SDNTK cartels, organizations, persons or entities which have ever supplied currency, weapons, ammunition, logistics, transportation, or supplies and/or financial or money laundering services to the FARC or its trafficking partners, directly or indirectly, as consideration for FARC coca paste or cocaine. Similarly, any SDNT or SDNTK person or entity involved with the financial or money laundering network of a drug cartel or organization described above also qualifies as an agency or instrumentality of the FARC under the TRIA.

All specially designated narcotics traffickers who assist and provide financial or technological support for or to, or who provide goods or services in support of, or who act on behalf of the international narcotics trafficking activities of a specially designated narcotics trafficker like the FARC here – a designated FTO - are each an "agency or instrumentality of a terrorist party." *See Ungar v. The Palestinian Authority* 304 F. Supp. 2d 232, 241 (D.R.I. 2004)(HLF is an agency or instrumentality of Hamas because it acts "for or on behalf of" Hamas).

*See* Order dated August 31, 2011, *Stansell v. Revolutionary Armed Forces of Colom.*, Case No., 09-CIV-02308-RAL in the United States District Court for the Middle District of Florida at pp. 4-5.

The Eleventh Circuit recently recognized the District Court's holdings concerning the fact that the blocked assets of agencies and instrumentalities of the FARC who were involved in the international narcotics trade centered in Colombia were subject to execution to satisfy a judgment against the FARC, while limiting the definition of "blocked asset" to exclude assets of "SDNTKs" blocked only pursuant to the Kingpin Act, 21 U.S.C. § 1901 *et seq*, as explained below. *See Stansell v. Revolutionary Armed Forces of Colom.*, 704 F.3d 910, 912 (11th Cir. 2013). Of relevance here, the Court recognized that a judgment against the FARC could be collected from its associates as a matter of course:

> because Appellees were victim creditors under their judgment with perfected liens on all proceeds derived from FARC's criminal activities, they began diligently pursuing the assets of FARC associates.

*Stansell v. Revolutionary Armed Forces of Colom.*, 704 F.3d 910, 913 (11th Cir. 2013).

### 2. The four requirements of the TRIA.

The execution may be made, provided that the following requirements are met:

(1) a person has obtained a judgment against a terrorist party;
(2) the judgment is either
  (a) for a claim based on an act of terrorism, or
  (b) for a claim for which a terrorist party is not immune under § 1605(a)(7);
(3) the assets are "blocked assets" within the meaning of TRIA; and
(4) execution is sought only to the extent of any compensatory damages.

*Weininger v. Castro*, 462 F. Supp. 2d 457, 479 (S.D.N.Y. 2006); TRIA, Pub. L. No. 107-297, 116 Stat. 2322. Plaintiff meets all four requirements.

### a. The Plaintiff has a judgment against terrorist parties.

Plaintiff has a federal district court judgment against the FARC and ELN, each of which is a "terrorist party". On October 8, 1997, the Secretary of State of the United States designated both the FARC and ELN as Foreign Terrorist Organizations [FTOs], pursuant to the Antiterrorism and Effective Death Penalty Act, 8 U.S.C. § 1189.[4] *See also* http://www.state.gov/j/ct/rls/other/des/123085.htm.

The FARC and ELN were named as Specially Designated Global Terrorists ("SDGTs") on October 31, 2001, under President Bush's Executive Order 13224 issued pursuant to authority of the International Economic Emergency Powers Act ("IEEPA") 50 U.S.C. §§ 1701, 1702. *See* http://www.treasury.gov/resource-center/sanctions/SDN-List/Documents/sdnew01.txt ("Effective 10-31-01 all [FTO]s were also designated [SDGT]s.").

Congress specifically defined the term "terrorist party" in Section 201(d) of the TRIA to include both a "terrorist organization" and a "foreign state designated as a state sponsor of terrorism":

> (4) TERRORIST PARTY- The term `terrorist party' means a terrorist, a terrorist organization (as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(vi))), or a foreign state designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371).

This definition includes the FARC and ELN, as has been held before concerning the FARC. As the Eleventh Circuit related:

> FARC has long been sanctioned by the United States for its international terrorism and narcotics trafficking activities. Of particular relevance to

---

[4] 8 U.S.C. §§ 1189(a)(1) authorizes the Secretary of State to designate an organization as a foreign terrorist organization… if the Secretary finds that (A) the organization is a foreign organization; (B) the organization engages in terrorist activity…; and (C) the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States. 8 U.S.C. § 1189(a)(1).

> this case, FARC has been designated both (1) a "Specially Designated Global Terrorist" under the International Economic Emergency Powers Act (Economic Powers Act), 50 U.S.C. §§ 1701, 1702, as well as (2) a "Significant Foreign Narcotics Trafficker" (SFNT) under the Kingpin Act. As a result of these designations, all FARC assets subject to United States jurisdiction are frozen.

*Stansell v. Revolutionary Armed Forces of Colom.*, 704 F.3d 910, 912 (11th Cir. 2013) (footnotes omitted).

### b. The judgment is for a claim for which a terrorist party is not immune under § 1605(a)(7).

Title 28 United States Code section 1605, the Foreign Sovereign Immunities Act, concerns the immunity of foreign states. As the Defendants in this matter are not foreign states, it is inapplicable and so cannot work to prevent collection. In other words, the judgment is a claim for which a terrorist party is not immune under § 1605(a)(7), or any other section of the FSIA.

### c. The assets are "blocked assets" within the meaning of TRIA.

According to the Eleventh Circuit Court of Appeals, the term 'blocked asset' means as follows:

> In pertinent part, § 201(d)(2)(A) defines a "blocked asset" to "mean[] . . . any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act [Trading Act] . . . or under sections 202 and 203 of the International Emergency Economic Powers Act [Economic Powers Act] . . . ." Terrorism Act § 201(d)(2)(A).

*Stansell v. Revolutionary Armed Forces of Colom.*, 704 F.3d 910, 915 (11th Cir. 2013)(footnotes omitted).

As will be shown more fully below, the individuals whose assets are at issue here are all Specially Designated Narcotics Traffickers (SDNTs) whose designations were made pursuant to the International Emergency Economic Powers Act ("IEEPA"). Thus, the assets are clearly "blocked assets" subject to execution.

Further, for each of the account holders whose accounts Plaintiff seeks to garnish, OFAC has made a "factual determination" in its designation that these blocked individuals and entities are SDNTs. *Weinstein v. Islamic Republic of Iran,* 609 F.3d 43, 50 (2d Cir. 2010)(OFAC designation is "factual determination" and allows court to exercise subject matter jurisdiction).  OFAC's decisions are entitled to great deference. *De Cuelar v. Brady*, 881 F.2d 1561, 1565 (11th Cir. 1989)(OFAC decision entitled to great deference, and should be reversed only if arbitrary or capricious); *Paradissiotis v. Rubin*, 171 F.3d 983, 987 (5th Cir. 1999)(OFAC's designation of SDN being "an agency's application of its own regulations, receives an even greater degree of deference than the *Chevron* standard, and must prevail unless plainly inconsistent with the regulation."); *Consarc Corp. v. OFAC*, 71 F.3d 909, 914-15 (D.D.C. 1995); *Zarmach Oil Services, Inc. v. U.S. Dept. of the Treasury*, 750 F.Supp.2d 150 (D.D.C. 2010)(OFAC regulations carry the force of law); *see also* 31 C.F.R. §538.802.

        **d.    Execution is sought only to the extent of any compensatory damages.**

The portion of Plaintiff's Judgment for compensatory damages, $16,800,000, is completely unsatisfied and is owed jointly and severally by the Judgment Defendants. Execution is sought only to the extent of this compensatory award.

    **C.    Arguably, no notice is required prior to the turnover of assets; nonetheless, in an abundance of caution, notice and an opportunity to object has been mailed to the account holder in accord with Fla. Stat. § 77.041, if an individual, and Fla. Stat. § 77.055.**

The Middle District of Florida has held:

> The TRIA does not require notice to the terrorist party, or an agency or instrumentality of the terrorist party, nor does it provide the terrorist party or an agency or instrumentality of the terrorist party with any right to be heard before or during the execution proceeding. The TRIA does not

>provide the terrorist party, or its agency or instrumentality, any right to contest or seek dissolution of any form of writ of execution, nor any right to jury trial, nor any right to service of the garnishee's answer, or any right to claim exemptions available to debtors under state law.

*See* Order dated August 31, 2011, *Stansell v. Revolutionary Armed Forces of Colom.*, Case No., 09-CIV-02308-RAL in the United States District Court for the Middle District of Florida at pp. 14-15.

Nonetheless, in an abundance of caution, each of the two the account holders subject to this motion has been mailed notice. On June 6, 2013, Plaintiff mailed a copy of Garnishee's Answer and Notice of Writ of Garnishment to the account holders' last known addresses pursuant to Fla. Stat. § 77.055. *See* Certificate of Service, D.E. 97, 100.

Fla. Stat. § 77.055 gives the account holder twenty days to respond. If no reply is filed, as was the case here, the garnishee may surrender the assets to the sheriff and may pay any money into the court registry. Fla. Stat. § 77.082. Because Plaintiff mailed notice to the last known addresses of the individuals at issue, the notice provisions of Florida garnishment law, insofar as they are applicable, have been satisfied.

      **D.**      **No OFAC license is required prior to execution.**

The TRIA was intended to clear the way for victims of terrorist organizations to collect on them without delay or interference from the Executive Branch. Its purpose "is to deal comprehensively with the problem of enforcement of judgments issued to victims of terrorism in any U.S. court by enabling them to satisfy such judgments from the frozen assets of terrorist parties . . . ." *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010)(quoting Senator Harkin a sponsor of the TRIA 148 Cong. Rec. S11524, at S11528 (Nov. 19, 2002)). The TRIA "establishes once and for all, that such judgments are to be enforced against any assets available in the U.S., and that the executive branch

has no statutory authority to defeat such enforcement under standard judicial processes, except as expressly provided in this act." *Id*. Thus, no OFAC license is required for Plaintiffs to execute on and take possession of the blocked proceeds under the TRIA, which it has recognized in similar cases. *See Weininger v Castro*, 462 F. Supp. 2d. 457, 499 (S.D.N.Y. 2006)(U.S. DOJ has indicated that "[i]n the event the Court determines that the funds are subject to TRIA, the funds may be distributed without a license from the Office of Foreign Assets Control").

This motion now turns to the specific assets at issue.

### III. Each of the assets sought to be garnished is a blocked asset of an agency or instrumentality of the FARC or ELN.

On April 1, 2013, Plaintiff obtained a discovery response from Helm Bank USA ("Helm" or "Helm Bank" or "Garnishee") identifying the existence of (a) OFAC blocked funds related to Rosa Edelmira Luna that were proceeds of a foreclosure sale in the amount of $207,095.46 and (b) OFAC blocked funds related to Paul Andrea Carrillo that were proceeds of a foreclosure sale in the amount of $133,879.67, (together with accrued interest since April 1, 2013, the "Funds"). *See* Exhibit C.

Luna and Carrillo were listed as SDNTs pursuant to the IEEPA and Executive Order 12978 in February 2008. *See* Federal Register, Volume 73, Issue 40. The blocked assets of Luna and Carrillo held at Helm Bank USA are thus "blocked assets" within the meaning of the TRIA. Garnishee in its responses to the Writs of Garnishment claims an interest in the Funds within the blocked accounts.

According to Gaddis, who "supervised numerous investigations targeting Jimenez and his affiliated organization, along with their connections to the FARC …", Luna and

MIA_ACTIVE 4103717.1

Carrillo "are the ex-wife and daughter of paramilitary drug lord Carlos Mario Jimenez, alias 'Macaco'." Gaddis Aff. at par. 12.

Jimenez was a member and leader of the United Self-Defense Forces of Colombia ("AUC") paramilitary group. *Id.* at par. 13. In that capacity, Jimenez was heavily involved in drug trafficking. *Id.* In fact, even after his supposed demilitarization and cessation of trafficking activities pursuant to a Colombian amnesty program, Jimenez successfully plotted to take over the Norte Del Valle Cartel. *Id.*

According to Gaddis,

> 7.   A constant element of the drug trade emanating from Colombia throughout my experience is that drug traffickers from the Norte del Valle Cartel have bought coca paste from the FARC and components of the ELN, which strengthen their alliances. Such networking between the FARC, ELN and traditional drug trafficking organizations such as the Norte del Valle Cartel, has occurred throughout Colombia with concentration in the States of Nariño, Cauca, Valle de Cauca, Caqueta and Putumayo. The liaison between Norte del Valle Cartel traffickers and the FARC and ELN is long-standing and has enabled the cartels to assert political and territorial control over an estimated 4-5 percent of Colombia's territory.
>
> 8.   The Norte del Valle Cartel is a major trafficker for the FARC and ELN, due to the Norte Del Valle Cartel's financing capability and drug distribution worldwide, focusing on a supply to Mexico, the United States and numerous European nations. Through the Cartel's drug trafficking enterprise and money laundering activities, it provides numerous Blocks and Fronts of the FARC and ELN with financial support to maintain its organizational structure, which is generated through drug trafficking and money laundering, yet hidden behind the cloak of Marxist ideals.

*Id.* at pars. 7-8.

The Norte Del Valle Cartel, and its affiliates, have been prior been found to be agents or instrumentalities of the FARC. The Middle District of Florida found:

> The Court finds that Transnational Criminal Organizations Norte del Valle cartel or North Valley cartel (referred to by OFAC as "North Valle" cartel and financial network), . . . , including individual members, divisions and

> networks, predecessor, subordinates, derivatives, and/or successor organizations are all agencies or instrumentalities of the FARC, because these organizations or cartels are or were involved in the cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipment or transportation, distribution of FARC coca paste or cocaine, or that assisted the FARC's financial or money laundering network and materially assisted or played a significant role in the FARC's cocaine manufacturing and international cocaine trafficking.

*See* Order dated August 31, 2011, *Stansell v. Revolutionary Armed Forces of Colom.*, Case No., 09-CIV-02308-RAL in the United States District Court for the Middle District of Florida at p. 6.

The Norte Del Valle Cartel was headed by Wilbur Varela. *Id.* Jimenez, along with others, was behind the successful effort to kill Varela. *Id*. With the death of Varela, Jimenez consolidated himself as the maximum authority in drug trafficking in Colombia controlling the drug trade in ten Colombian states and having authority over the Norte Del Valle Cartel. *Id.* at par. 14. Furthermore, Jimenez and his affiliates collaborated with FARC suppliers of coca paste to meet his criminal organization's need to distribute to Mexico, the United States, Spain and Italy on a continuous basis. *Id.*

Gaddis testifies that Luna and Carillo were part of Jimenez's mechanism for laundering funds. *Id.* Luna and Carrillo are known to have joined Jimenez's organization to assist in building nominee bank accounts, using currency conversion methods, foreign exchange business services, and front companies to receive electronic funds transfers (EFT), all of which placed illicit wealth into the hands of the Norte Del Valle drug cartel and the FARC and ELN. *Id.* The Norte Del Valle Cartel's ties to the FARC and ELN are well documented and are also confirmed by Gaddis. *See supra.* Gaddis confirms and concludes that, "[d]ue to their intentions and actions to benefit from the drug trafficking and other criminal activity of Jimenez, with clear knowledge of

15

Jimenez's connections to the FARC and ELN for the source of coca paste supply, Luna and Carrillo are clearly agents and instrumentalities of FARC and ELN." *Id.* at par. 16.

As a result of Garnishee's discovery responses, Plaintiff requested and the Clerk issued two Writs of Garnishment on Helm Bank USA concerning any indebtedness of Helm Bank USA to Paula Andrea Carillo and Rosa Edelmira Luna. [D.E. 60, 61.]

Garnishee answered those writs of garnishment, explaining that the blocked assets it held were the result of foreclosures pursuant to mortgages on properties owned by Carillo and Luna. [D.E. 88, 89]. The answers concluded that Garnishee was not indebted to either Carillo or Luna. *Id.* Plaintiff objected to those answers on the grounds that Garnishee had no license to remove funds owed to it and the fact that Garnishee held blocked assets was proof itself that the assets were assets of Carillo and Luna; otherwise, they would not be blocked pursuant to OFAC regulations. [D.E. 113, 115].

Based upon the agreement between Garnishee and Plaintiffs described below, Garnishee does not oppose this motion. Garnishee claims an interest in certain of the Funds on its own behalf, specifically, the balance of the unpaid notes that were secured by the mortgages on which Garnishee foreclosed, plus the attorneys' fees expended in prosecuting the two foreclosure actions.

In an effort to reach a compromise, Garnishee provided to counsel for Plaintiff copies of the underlying note, the judgment in foreclosure, the records of its attorneys' fees, and the OFAC license allowing for the reimbursement of its foreclosure expenses from the Funds. In order to avoid further litigation, Plaintiff and Garnishee agreed to an equitable division of the Funds, after the deduction of the foreclosure expenses which will be provided to Garnishee. As a result, Plaintiff agreed with Garnishee (a) to accept

16

the turnover of the Funds, (b) to disburse $200,000.00 to Garnishee in recognition of Garnishee's claim and reimbursement of foreclosure expenses and (c) to retain the net proceeds remaining in partial satisfaction of his Judgment.

### IV.     Conclusion.

As has been shown herein, the TRIA provides for execution against the blocked assets of non-party agents and instrumentalities of terrorist party judgment debtors without an OFAC license.  Plaintiff has obtained a judgment against two terrorist parties on a claim for which they are not immune under the Foreign Sovereign Immunities Act. Further, as has been shown herein, Garnishee holds assets, subject to a writ of garnishment, that are "blocked assets" within the meaning of TRIA of parties that are the agents and/or instrumentalities of two terrorist organizations.  Plaintiff seeks to execute on those assets, and execution is sought only to the extent of any compensatory damages. Finally, Plaintiff, without conceding that the notice provisions of Florida law concerning garnishments applies, nonetheless has mailed notice according to those statutes, and the account holders made no reply.

**WHEREFORE** Plaintiffs request entry of an order:

(i)     declaring that each of the following SDNT person or entity is an agency or instrumentality of the FARC:  Rosa Edelmira Luna and Paula Andrea Carrillo;

(ii)    declaring that each SDNT person's or entity's blocked account is subject to execution under the TRIA as a blocked asset of an agency or instrumentality of a terrorist party;

(iii)   finding that Carillo and Luna have been given notice pursuant to statute but have failed to respond;

(iv)      directing Helm Bank USA to wire transfer (pursuant to wire instructions that Plaintiff's counsel shall separately provide to counsel for Garnishee) to Plaintiff's counsel's trust account the Funds within five (5) business days from the date of the order;

(v)      directing Plaintiff and Plaintiff's counsel to wire transfer (pursuant to wire instructions that Garnishee's counsel shall separately provide to Plaintiff's counsel) $200,000 to Garnishee within three (3) business days following clearance of the funds transferred from Garnishee to Plaintiff's attorney's trust account;

(vi)      directing Plaintiff and Plaintiff's counsel to retain the remainder of the Funds in partial satisfaction of Plaintiff's judgment; and

(vii)      finding that upon delivery of the funds to Plaintiffs' counsel in satisfaction of this Court's Order and Writs under the TRIA, said Garnishee will be released from any liability to the above named SDNTs, Plaintiff and any third parties and discharged and dismissed from this garnishment action for compliance with Orders from this Court.

A proposed order is attached hereto as Exhibit D.

Dated: August 1, 2013.

                                               Respectfully submitted,

                                               **GROSSMAN ROTH, P.A.**
                                               2525 Ponce de Leon Boulevard,
                                               Suite 1150
                                               Coral Gables, Florida 33134
                                               Telephone: (305) 442-8666
                                               Facsimile: (305) 285-1668

                                               By: s/ *Seth E. Miles*
                                                         Seth E. Miles

                          Florida Bar No. 385530
                          sem@grossmanroth.com

**DO CAMPO & THORNTON, P.A.**
Miami Tower
100 S.E. 2nd Street, Ste. 2700
Miami, Florida 33131
Telephone: (305) 358-6600
Facsimile: (305) 358-6601

By: s/ *John Thornton*
     John Thornton
     Florida Bar No. 004820
     jt@dandtlaw.com

## CERTIFICATE OF SERVICE

**I hereby certify** that on August 1, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                          s/ *John Thornton*
                          John Thornton