

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOHN DOE,<br><br>                Plaintiff,<br>v.<br><br>EJERCITO DE LIBERACION NACIONAL ("ELN"), *et al.*,<br><br>                Defendants. | Civil Action No. 10-CV-21517-PCH<br><br>FILED BY ___ D.C.<br>NOV 25 2019<br>ANGELA E. NOBLE<br>CLERK U.S. DIST. CT.<br>S. D. OF FLA. - MIAMI |

## SEALED STATEMENT OF INTEREST OF THE UNITED STATES

Congress has authorized the Attorney General to send "any officer of the Department . . . to any . . . district in the United States to attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C. § 517.

The United States files this Statement of Interest[1] to express its views as to the requirements imposed by Section 201 of the Terrorism Risk Insurance Act ("TRIA") in order for a party to enforce judgments against certain blocked assets of terrorist parties, or their agents or instrumentalities. Specifically, as the circuit courts have repeatedly held, TRIA *only* allows for such enforcement if the terrorist party, their agency, or their instrumentality, has a demonstrated *ownership* interest in the blocked assets. *See, e.g., Hausler v. JP Morgan Chase, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014); *Heiser v. Islamic Republic of Iran*, 735 F.3d 934, 937-40 (D.C. Cir. 2013). The mere fact that assets are blocked pursuant to the Venezuelan sanctions regime is insufficient

---

[1] "A statement of interest, which is authorized by 28 U.S.C. § 517, is designed to explain to a court the interests of the United States in litigation between private parties." *Creedle v. Gimenez*, No. 17-22477-Civ-WILLIAMS/TORRES, 2017 WL 5159602, at *2 (S.D. Fla. Nov. 7, 2017) (quoting *Hunton & Williams v. United States DOJ*, 590 F.3d 272, 291 (4th Cir. 2010) (Michael, J., dissenting)).

for their attachment under TRIA § 201. The United States respectfully submits that Plaintiff has not yet established that Petrocedeño S.A., the putative terrorist agency or instrumentality in this action, has such an ownership interest in the requisite blocked funds, although the United States takes no position on whether Plaintiff could make such a showing.

## BACKGROUND

Plaintiff filed this Alien Tort Statute and Civil RICO action on May 10, 2010. Compl., ECF No. 1. He alleged that in September 1997, while returning to Venezuela from a business trip to Columbia, he was kidnapped by the Ejército de Liberación Nacional ("ELN"), trafficked to Colombia, sold to the Fuerzas Armadas Revolucionarias de Colombia ("FARC"), tortured, and ransomed. *See* Sealed Mot. for Release of Funds Held by Garnishee, SSM Petcoke LLC ("Release Mot."), at 3, ECF No. 258. The Court entered a default final judgment in 2012 against the ELN and the FARC, consisting of $16.8 million in compensatory damages, awarded jointly and severally, and $10 million in punitive damages, entered against each defendant. ECF No. 42.

Since that time, Plaintiff has only been able to collect approximately $546,000 of the judgment. *See* Release Mot. at 3. Plaintiff later learned, however, that SSM Petcoke ("Petcoke") a third-party company, held approximately $18,837,114.43 of assets that allegedly belong to Petrocedeño S.A., a/k/a PDVSA Petrocedeno S.A. ("Petrocedeño"), purportedly a majority-owned subsidiary of a state-owned Venezuelan oil company, PDVSA. *See id.* at 4. These assets – which consist of amounts Petcoke owes to Petrocedeño in exchange for purchased goods, *i.e.*, accounts payable (the "blocked funds") – are blocked pursuant to sanctions prohibitions administered by the U.S. Department of the Treasury's Office of Foreign Asset Control ("OFAC"). *See, e.g.*, Exec. Order ("EO") 13850, 83 Fed. Reg. 55,243 (Nov. 1, 2018) (one of the Venezuelan sanctions

authority pursuant to which PDVSA and its subsidiaries are blocked), 31 C.F.R. § 591.802 (delegation to OFAC).[2]

Plaintiff served Petcoke with a Writ of Garnishment on August 9, 2019. Release Mot. at 4. On October 1, 2019, Plaintiff filed a sealed motion for release of these funds (the "Release Motion") pursuant to TRIA § 201. *Id.*[3] The Release Motion argues that the Plaintiff has complied with the relevant procedural requirements of Florida law and the substantive requirements of TRIA to permit transfer of the assets. *See id.* at 5-9 (arguing procedural requirements satisfied); 9-33 (arguing TRIA's substantive requirements satisfied). The Release Motion focuses on whether Petrocedeño constitutes an agency or instrumentality of a terrorist party (ELN and FARC).[4] *See id.* at 13-33. The Release Motion does not address whether Petrocedeño owns the blocked funds within the meaning of TRIA. *See generally id.*

Magistrate Judge Otazo-Reyes issued a report and recommendation on October 23, 2019. *See* Sealed R. & R. ("R&R"), ECF No. 264. In it, the magistrate judge recommended that the district court issue a report finding that the assets on which Plaintiff seeks to execute are "blocked assets," pursuant to TRIA, and that Petrocedeño is an agency or instrumentality of the FARC and/or the ELN, and thus the blocked assets are subject to attachment and execution. *See id.* at 3. The magistrate judge therefore recommended that Petcoke be ordered to turn over a portion of the

---

[2] The United States has imposed sanctions on the Venezuelan regime pursuant to, *inter alia*, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq*, the National Emergencies Act, 50 U.S.C. § 1601, *et seq*, and Executive Orders, 13692, 13808, 13827, 13835, 13850, 13857, and 13884. PDVSA was first blocked by OFAC, pursuant to delegated authority, on January 28, 2019. *See* 84 Fed. Reg. 3,282 (Feb. 11, 2019).

[3] Counsel for Treasury was provided a copy of the filed sealed motion that same date pursuant to 31 C.F.R. § 501.605.

[4] For the purposes of this Statement of Interest, the United States does not take a position on whether Petrocedeño is such an agency or instrumentality.

3

blocked funds to Plaintiff. *See id.* at 3-4. The magistrate judge did not address whether Petrocedeño owns the blocked funds within the meaning of TRIA § 201. *See generally id.* The magistrate judge provided thirty days for parties to file any objections to the report and recommendation. *See* ECF No. 265.

## DISCUSSION

TRIA § 201 requires that a terrorist party, or their agent or instrumentality, have an ownership interest in any blocked assets before those assets may be attached in order to satisfy a judgment. But an asset can be blocked pursuant to the Venezuelan sanctions regime as long as a covered entity has an "interest" in that asset; ownership is not required to block an asset, although it is required to attach that asset under TRIA. Because Plaintiff has not yet established that Petrocedeño has an ownership interest in the blocked assets, it is the United States' position that attachment is improper at this time. The United States takes no position on whether Plaintiff could establish such an ownership interest.

I. **TRIA Requires That a Terrorist Party Have an Ownership Interest in Blocked Assets Before a Court May Authorize Attachment.**

In enacting the Terrorism Risk Insurance Act, Congress provided a mechanism for attaching terrorist property in order to satisfy certain civil judgments. Specifically, TRIA § 201(a) provides that "in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . . the blocked assets *of* that terrorist party (including the blocked assets *of* any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." TRIA § 201(a), *codified at* 28 U.S.C. § 1610 note (emphasis added); *see also* TRIA § 201(d)(2) (defining "blocked

4

assets" as, inter alia, those assets seized or frozen pursuant to sections 202 or 203 of the International Emergency Economic Powers Act).

Critically, and as the circuit courts have uniformly held, blocked assets may only be attached by a plaintiff when a terrorist party, their agent, or their instrumentality, has an *ownership interest* in the blocked asset. *See Heiser v. Islamic Republic of Iran*, 735 F.3d 934, 937-40 (D.C. Cir. 2013) (applying TRIA § 201 only against assets that the terrorist party owns); *Hausler v. JP Morgan Chase, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014) (acknowledging that a party must have property interests in a blocked asset before attachment would be proper, and defining the nature of those property interests under state law) (citing *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1001 (2d Cir. 2014)).[5] The United States agrees with this holding, and has repeatedly filed briefs in support of it.[6]

This ownership requirement follows directly from the text of TRIA § 201. The assets "of" an entity are not naturally understood to include all assets in which it has any interest of any nature

---

[5] There is a circuit split about whether a court should apply state or federal law in determining any ownership interest. *Compare Heiser*, 735 F.3d at 940-41 (federal law), *with Hausler*, 770 F.3d at 211-12 (state law). The United States does not take a position on which sovereign's law should apply in making such an ownership determination. If state law is applied, however, the relevant state law must be actually addressed to that question of whether the terrorist, their agency, or their instrumentality actually owns the assets at issue; not merely whether those assets might be attachable under certain circumstances. In *Bennett v. Islamic Republic Iran*, 825 F.3d 949, 963 (9th Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018), the Ninth Circuit acknowledged that the court "must determine the ownership of the assets in this context," but its decision also could be read to suggest that attachability alone is sufficient, even absent an affirmative ownership determination. The United States disagrees with that approach, which conflicts with the plain language of TRIA § 201, as discussed further in this Statement of Interest.

[6] *See, e.g.*, Br. for the United States as Amicus Curiae Supporting Neither Party at 10-14, *Bennett v. Islamic Republic of Iran*, 825 F.3d 949 (9th Cir. 2015) (No. 13-15442), ECF. No. 82; Br. for the United States as Amicus Curiae, on Pet. For Writ of Cert. at 19-23, *Bank Melli v. Bennett*, 138 S. Ct. 1260 (2017) (No. 16-334), 2017 WL 2275822.

5

whatsoever. Rather, the Supreme Court has repeatedly observed that the "use of the word 'of' denotes ownership." *Board of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 788 (2011) (quoting *Poe v. Seaborn*, 282 U.S. 101, 109 (1930)); *see also id.* (describing *Flores-Figueroa v. United States*, 556 U.S. 646, 647, 657 (2009), as treating the phrase "identification [papers] of another person" as meaning such items belonging to another person (brackets in original)); *Ellis v. United States*, 206 U.S. 246, 259 (1907) (interpreting the phrase "works of the United States" to mean "works belonging to the United States").

Applying that understanding of "of" to a disputed provision of patent law, the Court in *Stanford* concluded that "invention owned by the contractor" or "invention belonging to the contractor" are natural readings of the phrase "'invention of the contractor.'" 563 U.S. at 788. In contrast, in *United States v. Rodgers*, 461 U.S. 677 (1983), the Court held that the IRS could execute against property in which a tax delinquent had only a partial interest when the relevant statute permitted execution with respect to "any property, of whatever nature, *of* the delinquent, *or in which* he has any right, title, or interest." 26 U.S.C. § 7403(a) (emphasis added); *see also Rodgers*, 461 U.S. at 692-94. The Court found it important that the statute explicitly applied not only to the property "of the delinquent," but also specifically referred to property in which the delinquent "has any right, title, or interest." *See Rodgers*, 461 U.S. at 692 (emphasis removed). TRIA omits the additional phrase; the former only applies to the blocked assets "'of' a terrorist party," *see* TRIA § 201(a).

Moreover, while "the word [of] may carry a different meaning in other[] [statutes]," *Heiser*, 735 F.3d at 938, TRIA's context supports the ownership requirement. Extending this statute beyond ownership would expand these statutes well beyond common law execution principles. It is "basic in the common law that a lienholder enjoys rights in property no greater than those of the

6

debtor himself; . . . the lienholder does no more than step into the debtor's shoes." *Rogers*, 461 U.S. at 713 (Blackmun, J., concurring in part and dissenting in part); *see also id.* at 702 (majority op.) (implicitly agreeing with this description of the traditional common law rule); *Heiser*, 735 F.3d at 938 ("a judgment creditor cannot acquire more property rights in a property than those already held by the judgment debtor.") (quoting 50 C.J.S. Judgments § 787 (2013)). Congress enacted TRIA against the background of these attachment principles, and the statute should be interpreted consistent with those common-law precepts. *See Staples v. United States*, 511 U.S. 600, 605 (1994); *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107-10 (1991).

Nor would it make sense to expand TRIA § 201 beyond ownership. Allowing the victims of terrorism to satisfy judgments against the property of a terrorist party "impose[s] a heavy cost on those" who aid and abet terrorists. 148 Cong. Rec. S11527 (daily ed. Nov. 19, 2002) (statement of Sen. Harkin, discussing TRIA). Paying judgments from assets that are *not* owned by the terrorist party would not serve that goal. It would also "risk[] punishing innocent third parties." *Heiser*, 735 F.3d at 939; *see also id.* at 940 ("If potentially innocent parties pay plaintiffs' judgment, then the punitive purpose of these provision is not served. Quite the opposite. To the extent innocent parties pay some part of a terrorist state's judgment debt, the terrorist state's liability is ultimately reduced. Congress could not have intended such a result."); *Villoldo v. Castro Ruz*, 821 F.3d 196, 203 (1st Cir. 2016) (expressing concern that terrorist party state "would gain the benefit – through reduction of the amount [the foreign state] owes on the judgment against it" if blocked assets it did not own could be used to satisfy judgments).

**II.    Plaintiff Has Not Established That Petrocedeño Owns the Blocked Funds.**

Because Plaintiff has not established that Petrocedeño owns the blocked funds within the meaning of TRIA § 201, attachment is not appropriate at this time. The Release Motion does not

7

address the ownership question, and accordingly, the magistrate judge had no occasion to recommend a ruling on that issue. *See* Release Mot. at 11-13; R&R at 3-4. Rather, the magistrate judge found the assets were properly blocked. *See* R&R at 3, Release Mot. at 11-12; *see also* TRIA § 201(d)(2) ("blocked assets" for purposes of TRIA § 201 include assets frozen by the United States pursuant to sections 202 and 203 of the IEEPA). From this, the magistrate judge and the Plaintiff implicitly assumed that Petrocedeño owns the assets. But whether an asset is properly "blocked" pursuant to the Venezuelan sanctions regime is a separate and distinct question from whether the terrorist party *owns* that asset pursuant to TRIA § 201.

The United States does not dispute that Petrocedeño has an interest in the blocked assets, but this does not necessarily mean the company "owns" those assets. EO 13850, as amended, blocks all "property and interest in property that are in the United States" of PDVSA, purportedly the parent company of Petrocedeño.[7] *See* EO 13850 § 1, 83 Fed. Reg. at 55,243. OFAC regulations, in turn, define an "interest" in property broadly, as "an interest of any nature whatsoever, direct or indirect." *See, e.g.*, 31 C.F.R. § 591.305. This language is sweeping, and as courts have repeatedly held when analyzing the same definition of "interest" in other sanctions cases, it extends far beyond ownership interests. *See, e.g.*, *Heiser*, 735 F.3d at 936 ("Blocking [under OFAC regulations] was not based on legal ownership."); *Holy Land Found. for Relief &*

---

[7] Pursuant to OFAC's "50 Percent Rule," the blocking of PDVSA blocks the property and interests in property of all entities in which PDVSA owns a 50 percent or greater interest, *e.g.*, purportedly Petrocedeño. Furthermore, the Government of Venezuela (the definition of which explicitly includes PDVSA) is blocked pursuant to EO 13884, 84 Fed. Reg. 38,843 (Aug. 5, 2019). *See* EO 13884, § 1 (blocking all "property and interests in property of the Government of Venezuela that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person"); § 6(d) (stating that "the term 'Government of Venezuela' includes the state and Government of Venezuela . . . Petroleos de Venezuela, S.A. (PdVSA), [and] any person owned or controlled, directly or indirectly, by the foregoing . . . .").

8

*Development v. Ashcroft*, 333 F.3d 156, 162 (D.C. Cir. 2003) (holding that a sanctions target need not have a "legally enforceable" ownership interest or an "interest . . . defined in traditional common law terms" to justify blocking assets); *Global Relief Found., Inc. v. O'Neill*, 315 F.3d 748, 753 (7th Cir. 2002) (sanctions target need not have "legal ownership" of assets for assets to be blocked); *Heaton v. United States*, 353 F.2d 288, 291 (9th Cir. 1965) (sanctions regime with same definition of "interest" reached assets "without regard to who may hold title to the [assets]"); *Levin v. Bank of N.Y.*, No 09 CV 5900 RPP, 2011 WL 812032, at *17 (S.D.N.Y. Mar. 4, 2011) ("This definition of what constitutes a 'property interest' is substantially broader than that found under New York law, and evinces a congressional intent to block even property in which a terrorist entity has only a limited interest."); *OKKO Bus. PE v. Lew*, 133 F. Supp. 3d 17, 25 (D.D.C. 2015) ("interest" need not be a legally protected one); *Behring Int'l., Inc. v. Miller*, 504 F. Supp. 552, 556 (D.N.J. 1980) (the term "interest," as used in sanctions definitions, "has been accorded a broad definition").

This expansive interpretation of "interest," as something much broader than legal ownership, flows from the text of the sanctions regime itself. *See Estate of Heiser v. Islamic Rep. of Iran*, 885 F. Supp. 2d 429, 439-40 (D.D.C. 2012), *aff'd* 735 F.3d 934 (D.C. Cir. 2013) ("The expansive language OFAC employs to block transactions . . . stands in stark contrast to the language employed in TRIA § 201(a) where Congress chose to allow execution on only a subset of blocked assets: those 'of' a terrorist party."); *see also id.* at 440 ("Congress could have written – and could rewrite – TRIA § 201(a) to say 'blocked assets related to that terrorist party' or 'blocked assets in which that terrorist party has any property interest' and avoided creating an ownership requirement. Unfortunately for plaintiffs, the inescapable conclusion is that Congress intentionally used narrower language to permit attachment and execution only on a subset of

9

blocked assets – those 'of' ('owned by' or 'belonging to') a terrorist state."); *Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, 609 F.3d 111, 120 (2d Cir. 2010) ("An 'interest' in property is not necessarily synonymous with 'title to' or 'ownership of' property.") (citing BLACK'S LAW DICTIONARY).

Interpreting "ownership," as is necessary for attachment under TRIA, as distinct from "interests" as is necessary for blocking, also follows from the underlying purpose of economic sanctions. These sanctions are "designed to give the President means to control assets that could be used by enemy aliens" in order to promote national security and foreign policy objectives, even if those actors do not own the assets in question. *Global Relief Found.*, 315 F.3d at 753; *see also Holy Land Found.*, 333 F.3d at 163 (agreeing with *Global Relief Foundation* and calling its reasoning "unassailable"); *see also Dames & Moore v. Regan*, 453 U.S. 654, 673 (1981) ("The frozen assets serve as a 'bargaining chip' to be used by the President when dealing with a hostile country."); *Estate of Heiser*, 885 F. Supp. 2d at 440 (noting "that blocking serves a number of goals," including "providing the President with leverage to negotiate in resolving foreign policy disputes," depriving the sanctions target of property it may use contrary to U.S. interests, and otherwise limiting economic transactions with the targeted entity). TRIA, by contrast, "implicate[s] a different set of interests" – "compensatin[ing] victims of terrorist attacks while also punishing terrorist states by making them pay for their acts." *Id*. But this interest is served by ensuring that those states actually *own* the assets in question – "[i]f potentially innocent parties pay plaintiffs' judgment, then the punitive purpose of these provisions is not served." *Heiser*, 735 F.3d at 940. Furthermore, interpreting TRIA beyond the scope of its text would frustrate the purpose of the sanctions regime, which is to "permit the President to maintain the foreign assets at his disposal for use in negotiating the resolution of a declared national emergency." *Dames &*

10

*Moore*, 453 U.S. at 673. Allowing "individual claimants throughout the country to minimize or wholly eliminate this 'bargaining chip' through attachments, garnishments, or similar encumbrances on property," at least absent clear textual direction, of which there is none here, is incompatible with that intent. *Id.*

Because an asset can be blocked under the Venezuelan sanctions regime so long as the terrorist agent or instrumentality has an "interest" in the asset – even if there is no ownership – and because ownership is required under TRIA, Plaintiff cannot simply assume that a blocked asset is *a priori* subject to TRIA § 201, as he appears to do. *See* Release Mot. at 11-13. Accordingly, Plaintiff has not yet shown that he is entitled to the funds in question pursuant to TRIA, and his motion is premature, although the United States takes no position on whether Plaintiff could, upon further factual development, show that Petrocedeño has an ownership interest with respect to the blocked assets.

## CONCLUSION

For the aforementioned reasons, this Court should hold that TRIA § 201 requires that a terrorist, its agent, or its instrumentality, have an ownership interest in the blocked funds at issue before they may be attached.

Dated November 25, 2019                                Respectfully submitted,

                                                     JOSEPH H. HUNT
                                                    Assistant Attorney General

                                                    ANTHONY J. COPPOLINO
                                                    Deputy Branch Director

                                                    */s/ Joseph E. Borson*
                                                    JOSEPH E. BORSON (Va. Bar No. 85519)
                                                    Trial Attorney, U. S. Dept. of Justice
                                                    Civil Division, Federal Programs Branch
                                                    1100 L St., NW
                                                    Washington, D.C. 20005

Tel.    (202) 514-1944
Email:  joseph.borson@usdoj.gov

**ARIANA FAJARDO ORSHAN**
**UNITED STATES ATTORNEY**

_/s/ Matthew J. Feeley_
Matthew J. Feeley
Assistant United States Attorney
Florida Bar No. 0012908
99 N.E. 4th Street, Suite 300
Miami, Florida 33132-2111
Tel.: 305.961.9235/Fax: 305.530-7139
Email: Matthew.Feeley@usdoj.gov
*Counsel for United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2019, I caused the foregoing document to be served, via U.S. Mail, on the counsels listed on the following service list:

## SERVICE LIST
JOHN DOE,
vs.
EJERCITO DE LIBERACION
NACIONAL ("ELN"), *et al.*,
CASE NO.: 10-21517-HUCK/OTAZO-REYES
United States District Court Southern District of Florida

| | |
|---|---|
| **Seth Eric Miles**<br>Florida Bar No. 385530<br>Buckner + Miles<br>3350 Mary Street<br>Miami, FL 33133<br>305-964-8003<br>Fax: 786-523-0485<br>Email: seth@bucknermiles.com<br><br>**John Thornton**<br>do Campo & Thornton, P.A.<br>Florida Bar No. 004820<br>150 Southeast Second Avenue<br>Suite 602<br>Miami, FL 33131<br>305-358-6600<br>Fax: 305-358-6601<br>Email: jt@dandtlaw.com<br><br>***Counsels for Plaintiff*** | **Matthew J. Feeley**<br>**Assistant United States Attorney**<br>**Office of the United States Attorney**<br>**Southern District of Florida**<br>James L. King Federal Justice Building<br>99 N.E. 4th Street, Suite 300<br>Miami, FL 33132-2111<br>Email: Matthew.Feeley@usdoj.gov<br>Tel: 305.961.9235<br>Fax: 305.530.7139<br><br>***Counsel for United States of America*** |

Matthew J. Feeley
Assistant United States Attorney